## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| SAMUEL HIGGINS, | |
| Plaintiff, | Case No. 23-cv-50038 |
| v. | Honorable Philip G. Reinhard |
| TERI KENNEDY, *et al.*, | Magistrate Judge Lisa A. Jensen |
| Defendants. | |

## <u>DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES</u>

Defendants, Teri Kennedy, Brian Schmeltz, Susan Prentice, Tarry Williams, Rob Jeffreys, Michelle Victum, and Thomas Hochbaum, by and through their attorney, Kwame Raoul, Illinois Attorney General, and for their Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint state as follows:

### <u>INTRODUCTION</u>

1.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the First, Eighth, and Fourteenth Amendments to the United States Constitution; to Title IX; and to the Illinois Hate Crimes Act.

**<u>ANSWER</u>: Defendants admit Plaintiff purports to bring this action pursuant to 42 U.S.C. §1983. Defendants deny Plaintiff purports to bring this action pursuant to the Illinois Hate Crimes Act, as there is no count or allegations asserted in Plaintiff's Complaint.**

2.      Niyeh Higgins is a 37-year-old Black transgender woman who lives in Chicago. From March 2018 until February 2022, she was incarcerated in the Illinois

Department of Corrections (IDOC). IDOC officials housed Niyeh at Pontiac Correctional Center ("Pontiac"), a maximum-security men's prison, from December 2018 to February 4, 2021. From February 4, 2021, to February 4, 2022, IDOC officials housed Niyeh at Dixon Correctional Center ("Dixon"), a medium-security men's prison.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 2.**

3.       This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

**ANSWER: Defendants admit the allegations, as contained in paragraph 3.**

4.       Venue is proper in this district under 28 U.S.C. § 1391(b) because the events giving rise to the claims asserted in this complaint occurred in this judicial district.

**ANSWER: Defendants admit the allegations, as contained in paragraph 4.**

## PARTIES

5.       Plaintiff Niyeh Higgins is a 37-year-old transgender woman who was incarcerated in the Illinois Department of Corrections from March 19, 2018, to February 4, 2022. During the operative dates of this Complaint, Niyeh was confined at Lawrence Correctional Center in Sumner, IL, Pontiac Correctional Center in Pontiac, IL, and at Dixon Correctional Center in Dixon, IL.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 5.**

6.       Defendant Rob Jeffreys is the Director of the Illinois Department of Corrections and has been in that role since June of 2019. As the Director, he was acting

under color of law. At all relevant times to the events at issue in this case, Defendant Jeffreys maintained administrative and supervisory authority over the operations of all the prisons in Illinois, including Pontiac Correctional Center and Dixon Correctional Center. At all relevant times, Defendant Jeffreys promulgated rules, regulations, policies, and procedures of the IDOC. Defendant Jeffreys is sued in his individual capacity.

**ANSWER: Defendant Jeffreys admits insofar as he was the director of the Illinois Department of Corrections from June 2019 through February 4, 2022. Defendant Jeffreys denies the remaining allegations accurately reflect his responsibilities and duties.**

7.     Defendant Teri Kennedy was the Warden of Pontiac Correctional Center during the operative dates of this Complaint. At all times relevant to the events at issue in this case, Defendant Kennedy was employed by the Illinois Department of Corrections. As such, she was acting under color of the law. At all times relevant to the events at issue in this case, Defendant Kennedy was responsible for, among other things, ensuring the reasonable safety of people in IDOC custody, including protecting them from harassment and assaults. Defendant Kennedy is responsible for supervising all staff and managing all operations at Pontiac. She is sued in her individual capacity.

**ANSWER: Defendant Kennedy admits she was acting under color of law at all times relevant to this Complaint. Defendant Kennedy denies the remaining allegations, as contained in paragraph 7. Defendant Kennedy further states she was the Warden of Pontiac Correctional Center from December 2018 to January 2020. From January 2020 to January 2020,**

**Defendant Kennedy was the Warden at Local Correctional Center. Defendant Kennedy also denies that the above paragraph accurately describe her duties and responsibilities.**

8.     Defendant Tarry Williams is the Warden of Dixon Correctional Center. At all times relevant to the events at issue in this case, Defendant Williams was employed by the Illinois Department of Corrections. As such, he was acting under color of law. At all times relevant to the events at issue in this case, Warden Tarry was responsible for, among other things, ensuring the reasonable safety of people in IDOC custody, including protecting them from harassment and assaults. Defendant Williams is responsible for supervising all staff and managing all operations at Dixon. He is sued in his individual capacity.

**ANSWER: Defendant Williams denies the allegations, as contained in paragraph 8, insofar as he was employed by the Illinois Department of Corrections at all times relevant to the events at issue in this case. Defendant Williams further states that he was employed by the Illinois Department of Corrections at Dixon Correctional Center on February 1, 2022. Defendant Williams further states that the above paragraph does not accurately describe job duties and responsibilities.**

9.     Defendants Major Prentice, Officer Schmeltz, Officer Victium, Major Kemmermen, Lt. Hochbaum, Sergeant John Doe 1, Lieutenant John Doe 2, Officer John Does 3– 8, Unit Supervisor John Doe 9, and Officer John Does 12–20 are IDOC employees at Pontiac Correctional Center or Dixon Correctional Center. At all times relevant to the events at issue in this case, these defendants were acting under color of

law and within the scope of their employment with the Illinois Department of Corrections. These defendants are sued in their individual capacities.

**ANSWER: Defendants Schmeltz and Prentice admit the allegations, as contained in paragraph 9. Defendant Hochbaum admits the allegations, as contained in paragraph 9. Defendant Victum admits the allegations, as contained in paragraph 9, however, states she was employed at Dixon Correctional Center for part of the relevant time period, from February 2021 to February 2022.**

<u>FACTUAL ALLEGATIONS</u>

**Plaintiff Niyeh Higgins Is a Transgender Woman**

10.     Plaintiff Niyeh Higgins was born in Chicago, Illinois, on September 19, 1985. Niyeh began to identify herself as a girl at the age of five. Niyeh began taking hormones at the age of 26.

**ANSWER: Defendants have insufficient knowledge to form a belief as to the truth of the allegations, as contained in paragraph 10.**

11.     Throughout childhood, Niyeh was forced to move between the homes of her mother, aunt, and various foster homes due to her family's involvement in the foster care system. During this time, she frequently dealt with both physical and emotional violence, as well as sexual assault from family members, foster home staff, and other youth residing in the foster homes that she was placed in.

**ANSWER: Defendants have insufficient knowledge to form a belief as to the truth of the allegations, as contained in paragraph 11.**

12.     Despite the hardship that Niyeh faced from an early age, Niyeh aspires to

work in service of other transgender individuals that face hardships like the ones that she faced as a young person. She also is an avid reader and enjoys writing. Niyeh hopes to one day publish a book about her life experiences and the pride she has in being a Black transgender woman who has survived horrific circumstances and treatment.

**ANSWER: Defendants have insufficient knowledge to form a belief as to the truth of the allegations, as contained in paragraph 12**.

The Illinois Department of Corrections Housed Plaintiff Niyeh Higgins in Men's Prisons Despite the Fact That She Is a Transgender Woman

13.     Niyeh first entered IDOC custody on March 19, 2018.

**ANSWER: Defendants have insufficient knowledge to form a belief as to the truth of the allegations, as contained in paragraph 13.**

14.     Upon entering IDOC custody, Plaintiff was exclusively housed in male prisons and experienced endless harassment and abuse by IDOC staff and prisoners because of her transgender status and because IDOC staff inappropriately housed Niyeh in a men's prison.

**ANSWER: Defendants deny the allegations, as contained in paragraph 14.**

15.     Niyeh's early years of incarceration were incredibly difficult as she adjusted to confinement in a men's facility.

**ANSWER: Defendants have insufficient knowledge to form a belief as to the truth of the allegations, as contained in paragraph 15**.

16.     On at least three occasions, Niyeh attempted suicide due to the harassment and violence she faced in men's IDOC facilities as a transgender woman.

**ANSWER: Defendants have insufficient knowledge to form a belief as to the truth of the allegations, as contained in paragraph 16, insofar as Plaintiff attempted suicide. Defendants deny the remaining allegations, as contained in paragraph 16.**

### IDOC Staff Sexually Harassed and Abused Niyeh
### at the Pontiac Correctional Facility

17.     From December 2018 to February 4, 2021, IDOC housed Niyeh at Pontiac Correctional Facility. While at Pontiac, correctional officers and staff consistently harassed her and subjected her to an abusive environment because she is a transgender woman.

**ANSWER: Defendants deny the allegations, as contained in paragraph 17.**

18.     Plaintiff submitted to IDOC officials numerous grievances documented that officers rejected her identity as a transgender woman, and others would make sexual and/or harmful comments to her using slurs such as "fag," "he/she," et cetera.

**ANSWER: Defendants have insufficient knowledge to form a belief as to the truth of the allegations, as contained in paragraph 18**.

19.     Defendant Officer Schmeltz, a male correctional officer, sexually assaulted and humiliated Niyeh during a cell search. Upon information and belief, this incident occurred during the last week of January in 2021.

**ANSWER: Defendants deny the allegations, as contained in paragraph 19.**

20.     When Defendant Officer Schmeltz entered Niyeh's cell, she reminded him

that she is a transgender woman and stated her need to be searched by a female staff member.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 20.**

21.     Defendant Schmeltz ignored Niyeh's requests, handcuffed her to a bar in her cell and proceeded to search her person and the cell. During this search, he felt all over her body, patting her down ostensibly to determine if she had any contraband on her. When Defendant Schmeltz hand arrived at Niyeh's breasts, he slowed the search down, and then proceeded to grab and fondle her breasts.

**ANSWER: Defendant Schmeltz has insufficient knowledge or information to form a belief as to the truth of the allegations that he searched her person and cell, as he does not recall Plaintiff. Defendant Schmeltz denies the remaining allegations, as contained in paragraph 21. Defendants Kennedy, Williams, Jeffreys, Prentice, Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 21.**

22.     Immediately after this assault, Officer Schmelz told Niyeh that "he hated transgender, gay, and faggot people." Multiple people living on the unit witnessed this exchange.

**ANSWER: Defendant Schmeltz denies the allegations, as contained in paragraph 22. Defendants Kennedy, Williams, Jeffreys, Prentice, Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 22.**

23.     Niyeh informed Defendant Major Prentice about the incident that occurred with Defendant Officer Schmeltz, and requested that in the future, IDOC prohibit male officers from conducting any strip searches of her. Defendant Major Prentice laughed at Niyeh, mocked her and told her that male officers would continue to strip search her. Major Prentice took no action to protect Niyeh from the harm of male officers conducting invasive strip searches of her.

**<u>ANSWER</u>: Defendant Prentice denies the allegations, as contained in paragraph 23. Defendants Kennedy, Williams, Jeffreys, Schmeltz, Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 23, insofar as what Plaintiff told Defendant Prentice. Defendant Schmeltz denies the alleged incident occurred.**

24.     As a result of Major Prentice's failure to act, while housed at Pontiac from December 2018 until February 4, 2021, IDOC male staff inappropriately strip searched and sexually abused her dozens of times.

**<u>ANSWER</u>: Defendants deny the allegations, as contained in paragraph 24.**

25.     Upon information and belief, from January to February of 2021, John Does 18–20 conducted numerous physically and sexually aggressive pat downs and/or strip searches of Niyeh. None of these circumstances happened during exigent circumstances. Each of these officers knew that Niyeh was a transgender woman and that a female officer should have conducted the search and that Niyeh would be subjected to physical and emotional harm as a result of these searches. Despite this

knowledge, these officers proceeded to search Niyeh in a manner that caused her serious harm and humiliation by inter alia, groping her body, including but not limited to her breasts and genital area, viewing her body in various stages of undress, mocking, taunting and threatening her with physical and sexual violence.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 25.**

### IDOC Staff Continued Abusive Strip Searches and Failed to Protect Niyeh from Sexual Abuse at Dixon Correctional Facility

26.     In February 2021, IDOC officials transferred Niyeh to Dixon Correctional Center. Dixon is a men's correctional facility.

**ANSWER: Defendants admit Dixon is a men's correctional facility. Defendants have insufficient knowledge or information to form a belief as to the truth of the remaining allegations, as contained in paragraph 26.**

27.     Plaintiff submitted numerous grievances documenting that, at Dixon, correctional officers, staff members, and inmates continued to discriminate against and abuse, humiliate and threaten Niyeh with physical and sexual violence. Officers and staff members harassed Niyeh with sexual language and transphobic slurs on a daily basis.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as tot the truth of the allegations, as contained in paragraph 28, insofar as Plaintiff submitted numerous grievances. Defendants deny the remaining allegations, as contained in paragraph 27.**

28.     On May 26, 2021, Defendant Officer John Doe 3 conducted an abusive

and humiliating strip search of Niyeh. Prior to the search, Niyeh reminded Defendant John Doe 3 that she was a transgender woman and that a female staff member should search her. Niyeh specifically requested that a female IDOC officer conduct the strip search. Even though no exigent circumstances were present, and Defendant Officer John Doe 3 knew that proceeding with this search would harm Niyeh, Defendant Officer John Doe 3 denied Niyeh's request and proceeded with the search.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as tot the truth of the allegations, as contained in paragraph 28.**

29.     Defendant Officer John Doe 3 forced Niyeh to disrobe and then stand before him naked as he shook her clothes, and ordered her to lift her arms, lift her feet, turn around and spread her buttocks. During the entirety of this search, Defendant Officer John Doe 3 mocked and humiliated Niyeh, referring to her with anti-gay and transphobic slurs.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 29.**

**Plaintiff Was Sexually Assaulted After
Dixon Correction Center Staff Ignored Her Cries for Help**

30.     While at Dixon, an inmate named "Demon" made sexual advances at Niyeh. "Demon" sent Niyeh threatening notes that graphically detailed the sexual acts that he wanted to do to her. Demon sent these notes to Niyeh several times a week for about a month. "Demon" told other inmates on the unit that he intended to be with Niyeh sexually.

**ANSWER: Defendants have insufficient knowledge or information to**

**form a belief as to the truth of the allegations, as contained in paragraph 30.**

31.    Niyeh became scared because of the language that "Demon" used in the notes, and because several other inmates on the unit knew "Demon's" intentions to be with Niyeh sexually.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 31.**

32.    Niyeh verbally reported the threats to Defendants Officer Victium, John Does 4– 8, who worked on her housing unit, and Defendant Unit Supervisor John Doe 9. Niyeh requested that each of these officers take action to protect her from Demon. Each of these Defendants failed to take action to protect Niyeh.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 32, insofar as Plaintiff verbally reported the threats to John Does 4-8. Defendants deny the remaining allegations, as contained in paragraph 32.**

33.    In June 2021, "Demon" entered Niyeh's cell and trapped her there by blocking the entrance, slapping her and threatening her with physical harm. He then fondled her body while threatening her with further instances of physical and sexual violence. He likely ended this assault when he realized Niyeh's cell mate was present and witnessed the entire event.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 33.**

34.    After this assault, Niyeh reported it to Defendants Officer Victium, John Does 4– 8, and Unit Supervisor John Doe 9. They responded by mocking Niyeh about

the allegations against "Demon" by using slurs demeaning to transgender individuals.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 35, insofar as Plaintiff reported the threats to John Does 4-8 and Unit Supervisor John Doe 9. Defendant Victum denies the remaining allegations, as contained in paragraph 33. Defendants Jeffreys, Kennedy, Williams, Prentice, Schmeltz and Hochbaum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 34.**

35.     Niyeh knew that Defendants Officer Victium, John Does 4–8, and Unit Supervisor John Doe 9 would take no action to keep her safe from Demon and that Demon intended to continue to physically and sexually assault her. As a result, Niyeh requested to be transferred into Dixon's segregation unit in order to protect herself from Demon. While in segregation she was locked alone in her cell for 23 hours a day and her mental health began to deteriorate.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 35.**

36.     Defendants Officer Victium, John Does 4–8, and Unit Supervisor John Doe 9 ignored Niyeh's requests for help and refused to protect her from Demon. As a direct result of their actions and inactions, Demon physically and sexually assaulted Niyeh.

**ANSWER: Defendant Victum denies the allegations, as contained in paragraph 36, insofar as Defendant Victium ignored Plaintiff's requests for help and refused to protect her. Defendants have insufficient knowledge or**

information to form a belief as to the remaining allegations, as contained in paragraph 36.

**Plaintiff Requested to Be Housed in Segregation
Because She Was Fearful for Her Safety, and
Because Dixon Staff Failed to Protect Her from Sexual Abuse**

37.     The only place that Niyeh felt that she would be safe from physical and sexual violence was in segregation, because IDOC staff failed to intervene or protect Niyeh from the violence of other inmates.

**ANSWER: Defendants deny the allegations, as contained in paragraph 37, insofar as IDOC staff failed to intervene or protect Plaintiff. Defendants have insufficient knowledge or information to form a belief as to the truth of the remaining allegations, as contained in paragraph 37.**

38.     While at Dixon, Niyeh requested to be transferred to segregation at least four times in order to escape the violence and harassment of IDOC staff and other inmates, including "Demon."

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 38, insofar as Plaintiff requested to be transferred to segregation. Defendants deny the remaining allegations, as contained in paragraph 38.**

39.     Defendant Officers Major Kemmeren, Lt. Hochbaum, and John Does 12-14 strip searched Niyeh each time she was housed in segregation, despite her request to be searched by women correctional officers.

**ANSWER: Defendant Hochbaum denies the allegations, as contained in**

**paragraph 39. Defendants Jeffreys, Kennedy, Williams, Schmeltz, Prentice and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 39.**

40.     Defendant Major Kemmeren, Lt. Hochbaum, and John Does 12-14 threatened to call the weapons taskforce if Niyeh did not submit to the strip search by a man.

**ANSWER: Defendant Hochbaum denies the allegations, as contained in paragraph 40. Defendants Jeffreys, Kennedy, Williams, Schmetlz, Prentice and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 40.**

41.     Each time Niyeh complied with the search in segregation, Defendant Major Kemmeren, Lt. Hochbaum, and John Does 12-14 conducted the search in a manner that was abusive. Defendant Major Kemmeren, Lt. Hochbaum, and John Does 12-14 touched and groped Niyeh's body each time they conducted strip searches in segregation.

**ANSWER: Defendants deny the allegations, as contained in paragraph 41.**

42.     After the strip searches, Niyeh filed PREA reports about the abusive searches. In response to Niyeh's PREA reports, IDOC staff found that because she submitted to the search, there was no violation of IDOC policy. In reality, the Defendant officers forced Niyeh to comply with the strip searches. No further action came from this PREA report.

**ANSWER: Defendants have insufficient knowledge or information to**

**form a belief as to the truth of the allegations, as contained in paragraph 42.**

43. The violence that Niyeh faced was extremely overwhelming and she ended up self-harming by cutting herself in response. Niyeh asked for a crisis team immediately after cutting herself; however, the request was denied until the following day.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 43.**

### IDOC Officials and Employees Have Notice that Transgender Women in Custody Are Particularly Vulnerable to Abuse

44. According to the National Prison Rape Elimination Act (PREA) Resource Center, "Data shows transgender people have the highest risk of experiencing sexual abuse in confinement, yet correctional staff refuse to respect transgender people by referring to them by their correct gender pronouns and preferred name. This sends the clear message both to transgender incarcerated people and to fellow incarcerated people that they are not deserving of the same levels of respect, helping paint them as 'acceptable' targets of victimization."

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 44.**

45. According to the National PREA Resource Center, "Being transgender is a *known* risk factor for being sexually victimized in confinement settings. The [PREA] standard, therefore, requires that facility, housing, and programming assignments be made 'on a case-by- case basis.' Any written policy or actual practice that assigns transgender or intersex inmates to gender-specific facilities, housing units, or

programs based solely on their external genital anatomy violates the standard. A PREA-compliant policy must require an individualized assessment. A policy must give 'serious consideration' to transgender or intersex inmates' own views with respect to safety."

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 45.**

46. As professional prison administrators like Defendants Jeffreys, Kennedy, and Williams know, the above regulations exist to protect the health and safety of transgender prisoners.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 46.**

47. Additionally, a survey conducted by the National Center for Transgender Equality found that "Once they are incarcerated, trans people are at significantly higher risk of violence. Trans prisoners are over nine times more likely than the prison average to be assaulted or abused by fellow prisoners, and over five times more likely to be assaulted or abused by facility staff."

**ANSWER: Defendant Hochbaum admits the allegations, as contained in paragraph 47. Defendants Jeffreys, Kennedy, Williams, Schmeltz, Prentice and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 47.**

48. According to a 2015 survey also conducted by the National Center for Transgender Equality, a quarter of transgender prisoners surveyed reported being physically assaulted by other people in custody or staff. Nora Neus, *Trans Women Are*

*Still Incarcerated with Men and It's Putting Their Lives at Risk*, CNN, Jun. 23, 2021, https://www.cnn.com/2021/06/23/us/trans-women-incarceration/index.html.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 48. Defendants further state that the above link is not accessible.**

49.     Professional prison administrators including Defendants Jeffreys, Kennedy, and Williams know that incarcerated transgender people like Niyeh are at risk of harm in men's prisons and that it is essential to enact policies to ensure their health and safety.

**ANSWER: Defendants Jeffreys, Kennedy and Williams deny the allegations, as contained in paragraph 49. Defendants Schmeltz, Prentice, Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 49.**

### The Northern District of Illinois Entered a Preliminary Injunction That Permits Transgender Individuals to Select the Gender of the Correctional Officer Conducting Their Strip Search

50.     *Monroe v. Baldwin*, 3:18-CV-00156-NJR-MAB (S.D. Ill. 2019), is a class action lawsuit challenging IDOC's provision of care and treatment to transgender women in its custody.

**ANSWER: Defendants admit the allegations, as contained in paragraph 50.**

51.     On December 19, 2019, Judge Nancy Rosenstengel found that IDOC's failure to protect transgender women in its custody from male officers conducting pat

downs and strip searches required court intervention and ordered IDOC to "avoid[] cross-gender strip searches."

**ANSWER: Defendants admit Judge Rosenstengel issued an order to "avoid cross-gender strip searches." Defendants deny the remaining allegations, as contained in paragraph 51. Defendants further state that the order was a preliminary injunction, upon information and belief, the order was not a permanent injunction.**

52. On August 9, 2021, Judge Rosenstengel ordered more specific relief and required IDOC to amend its policies so that transgender women "*shall be allowed to choose the gender of the correctional officer who will conduct a search of their person, and the search SHALL BE conducted by a correctional officer of the gender requested.*"

**ANSWER: Defendants admit Judge Rosenstengel issued an order that inmates "shall be allowed to choose the gender of the correctional officer who will conduct a search of their person, and the search shall be conducted by a correctional officer of the gender requested." Defendants deny the remaining allegations, as contained in paragraph 52. Defendants further state that the order was a preliminary injunction, upon information and belief, the order was not a permanent injunction.**

53. All IDOC facilities must allow transgender inmates to choose the gender of the correctional officer searching their person.

**ANSWER: Defendant Jeffreys, Kennedy and Prentice have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 53. Defendants Williams, Schmeltz, Hochbaum and**

**Victum admit the allegations, insofar as that was the practice at Dixon. Defendants Williams, Schmeltz, Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegation, insofar as that is a requirement for all IDOC facilities.**

54.     On August 11, 2021, Chief Eilers sent an email to Dixon staff indicating that all transgender and gender non-conforming individuals in custody shall be searched by a staff member of the gender chosen by that person, which is designated on their identification card.

**ANSWER: Defendant Jeffreys, Kennedy, Schmeltz, Prentice and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 54. Defendant Hochbaum admits the allegations, as contained in paragraph 54.**

55.     Defendant Jeffreys became a defendant in *Monroe v. Baldwin* on January 31st, 2020, and the case was renamed *Monroe v. Jeffreys*.

**ANSWER: Defendant Jeffreys admits the allegations, as contained in paragraph 55. Defendants Kennedy, Williams, Prentice, Shmeltz, Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 55.**

56.     Defendants Jeffreys, Kennedy, and Williams had knowledge of the substantial risk of harm to transgender incarcerated people from, among other things, *Monroe v. Jeffreys*.

**ANSWER: Defendants Jeffreys, Kennedy and Williams deny the allegations, as contained in paragraph 56. Defendants Schmeltz, Prentice,**

**Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 56.**

### Plaintiff Sought Protection From IDOC Staff
### Because of the Harassment She Faced as a Trans Woman,
### and IDOC Staff Failed to Her

57.     In August 2021, Niyeh requested that Sgt. Skipwalk supervise her move to another cell in order to ensure her safety. Defendant Major Kemmerson, the shift commander at the time, refused to approve the move and told Niyeh that she needed to "either go in the cell and fight or just consider it a seg walk."

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 57.**

58.     IDOC staff were aware that Niyeh faced violence in her then cell, and rather than taking steps to ensure Niyeh's safety IDOC staff encouraged Niyeh to be violent in order to protect herself.

**ANSWER: Defendants deny the allegations, as contained in paragraph 58.**

59.     Niyeh requested a crisis team because she felt unsafe, depressed, and that she needed to be watched by a mental health professional. She specifically requested that IDOC mental health worker by the name of Brooks come and talk to her.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 59.**

60.     Brooks did not fill out a crisis form which is IDOC procedure in these instances, and instead told Sgt. Skipwalk that Niyeh did not need to be monitored.

**ANSWER: Defendants have insufficient knowledge or information to**

form a belief as to the truth of the allegations, as contained in paragraph 60.

61.     Defendant Major Kemmerson walked Niyeh to segregation, where Niyeh severely cut and scarred her arms. She never received medical attention for these injuries.

**ANSWER**: **Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 61**.

### Plaintiff Continued to Be Harassed, Abused, and Strip Searched in Violation of a Preliminary Injunction Permitting Transgender Individuals to Choose the Gender of the Officer Searching Them

### IDOC Staff Conducted Large Group Strip Search and Forced Plaintiff to Endure Further Humiliation, Harassment and Abuse

62.     Two weeks after Judge Rosenstengel's preliminary injunction, on August 24, 2021, IDOC staff conducted a mass strip search and forced dozens of individuals in custody who were in Dixon's outside recreation area (referred to as the "yard") to strip naked and submit to a search.

**ANSWER**: **Defendant Jeffreys has insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 62.**

63.     IDOC staff ordered Niyeh to enter a cage and Defendant Officers John Doe 15 and John Doe 16 approached the cage to conduct her strip search. Niyeh reminded Defendant Officers Doe 15 and 16 that she was a transgender woman, that she had a right to have a female IDOC staff person search her and that she would suffer harm if they proceeded to conduct the search.

**ANSWER:** **Defendants have insufficient knowledge or information to**

**form a belief as to the truth of the allegations, as contained in paragraph 63.**

64.     Defendant John Doe Officers 15 and 16 ignored Niyeh's request and proceeded with the strip search. They ordered Niyeh to undress in the cage, while male people in custody could clearly view her naked body. During the strip search male people in custody stared at Niyeh's naked body and threatened her with sexual and physical violence.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 64.**

65.     While Niyeh was naked and receiving these threats, Defendant Officers John Doe 15 and John Doe 16 laughed and mocked Niyeh.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 65.**

66.     Thirteen days before this strip search, Chief Eilers emailed Dixon staff and informed them that the federal court required staff to accommodate and protect transgender women in custody from invasive searches conducted by male IDOC staff. Despite receiving this notice, Defendants Doe 15 and 16 proceeded with this abusive strip search.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 66.**

### IDOC Staff Encourage Violence Against Plaintiff

67.     In October 2021, Defendant Victium told Niyeh's cellmates that Niyeh was actually a man, and that they refuse to address Niyeh with the proper pronouns.

**ANSWER: Defendant Victum denies the allegations, as contained in paragraph 67. Defendants Jeffreys, Kennedy, Schmetlz, Prentice and Hochbaum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 67.**

68.    The actions of Defendant Victium were in direction violation of Judge Rosenstengel's August 9, 2021 court order regarding transgender inmates, which stated that all IDOC staff must be trained on transgender issues and the harm of misgendering transgender inmates.

**ANSWER: Defendant Victum denies the allegations, as contained in paragraph 68. Defendants Jeffreys, Kennedy, Schmetlz, Prentice, Williams and Hochbaum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 68.**

69.    The actions of Defendant Victium encouraged other inmates to misgender Niyeh, use taunting and harassing language towards her, and to be violent towards Niyeh.

**ANSWER: Defendant Victum denies the allegations, as contained in paragraph 69. Defendants Jeffreys, Kennedy, Schmetlz, Prentice, Williams and Hochbaum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 69.**

70.    Following this incident, an inmate threatened to hit Niyeh, saying "You're going to make me hit you in your shit." Defendant Victium overheard this comment and replied, "Please do, I'll pay you."

**ANSWER: Defendant Victum denies the allegations, as contained in**

paragraph 70. **Defendants Jeffreys, Kennedy, Williams, Hochbaum, Schmeltz and Prentice have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 70.**

71.     Niyeh then asked Defendant Victium what she had done to make her encourage violence against Niyeh, and Defendant Victium simply replied "because I do not like you."

**ANSWER: Defendant Victum denies the allegations, as contained in paragraph 71. Defendants Jeffreys, Kennedy, Williams, Hochbaum, Schmeltz and Prentice have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 71.**

72.     Niyeh continued to face threats and harassment from inmates and Defendant Victium. Niyeh informed several IDOC mental health staff, and nothing was done to prevent Defendant Victium from using harassing language towards Niyeh, and from encouraging other inmates to be violent with Niyeh. As a result of Defendant Victium's actions and inactions, Niyeh suffered humiliation, extreme anxiety, and mental anguish. She lived every day in fear for her life.

**ANSWER: Defendants deny the allegations, as contained in paragraph 72.**

**IDOC Staff Conducted Abusive Strip Searches Before and After Visitation**

73.     In the fall of 2021, a friend of Niyeh's scheduled a visit with her for November 6, 2021. IDOC staff were aware of this visit at least two weeks prior to the scheduled date. IDOC strip searches people in custody before and after visitation. In an effort to be proactive, Niyeh informed Dixon officials that she would require a female

staff person to strip search her before and after her visit. Upon information and belief, Defendant Warden Williams, Officer John Doe 17, Sergeant John Doe 1 and Lieutenant John Doe 2 were aware of this request in advance of the initial strip search.

**ANSWER: Defendants deny the allegations, as contained in paragraph 73, insofar as they are directed towards Defendant Williams. Defendants have insufficient knowledge or information to form a belief as to the truth of the remaining allegations, as contained in paragraph 73.**

74.     Despite Niyeh's request, IDOC staff neglected to make arrangements that accommodated Niyeh's request.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 74.**

75.     Defendant Officer John Doe 17 informed Niyeh that if she did not comply with a strip search conducted by a man, she would forgo the visit with her friend. Plaintiff did not feel comfortable about a search conducted by a man considering the abusive she previously endured during IDOC strip searches. However, in order to have the visit with her friend, Niyeh complied with the search.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 75.**

76.     Defendant Officer John Doe 17 conducted Niyeh's strip search in a room that provided no privacy. The door remained open the entire time of the search, making Niyeh's body viewable to several individuals who passed by. The strip search conducted by Defendant Officer John Doe 17 was violating, invasive, and humiliating for Niyeh.

**ANSWER: Defendants have insufficient knowledge or information to**

**form a belief as to the truth of the allegations, as contained in paragraph 76.**

77. Defendant Officer John Doe 17 asked Niyeh to bend over, spread her cheeks, cough, and squat all within view of other correctional officers, staff, and inmates. Defendant Officer John Doe 17 patted down Niyeh in a manner that included groping and touching all over Niyeh's body parts, including her breasts.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 77.**

78. Defendant Officer John Doe 17 became aroused and got an erection after completing the search. Niyeh felt the erection against her body.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 78.**

79. Niyeh requested that a different officer conduct the strip search immediately following the visit with her friend, because she felt extremely uncomfortable and unsafe following Defendant Officer John Doe 17's abusive actions.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 79.**

80. After this egregious incident, Niyeh informed the Defendant Sergeant John Doe 1 and Defendant Lieutenant John Doe 2 about the actions of Defendant Officer John Doe 17. Niyeh also filed a PREA report about the incident. However, IDOC staff never answered her PREA report, and no remedial steps were taken to address the first officer's conduct.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 80.**

81. Niyeh filed several PREA reports about officer misconduct during her time at Dixon. Each PREA report was deemed "unfounded."

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 81.**

82. IDOC staff continues to designate Niyeh's PREA reports as unfounded, and requests for strip searches by women were not met. Some of the responses included "it's not going to happen" and "women are not going to search you."

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 82.**

83. Niyeh dealt with invasive, abusive, and humiliating strip searches conducted by men until she was released from Dixon Correctional Facility on February 4, 2022.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 83.**

84. The abusive strip searches, as well as the emotional, physical, and sexual abuse took a significant toll on Niyeh. She was often distraught, depressed, and fearful for her safety.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 84.**

**Pattern and Practice Allegations Against IDOC Director Rob Jeffreys**

85. Despite the fact that Niyeh is a transgender woman, Defendant Jeffreys permitted Niyeh to be housed in men's prisons.

**ANSWER: Defendant Jeffreys denies the allegations, as contained in paragraph 85. Defendants Kennedy, Williams, Shmeltz, Prentice, Hochbaum and Prentice have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 85.**

86. Defendant Jeffreys failed to promulgate and enforce policies to protect Niyeh and other transgender individuals from harm, abuse, harassment, and humiliation.

**ANSWER: Defendant Jeffreys denies the allegations, as contained in paragraph 86. Defendants Kennedy, Williams, Shmeltz, Prentice, Hochbaum and Prentice have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 86.**

87. Defendant Jeffreys knew that there were many transgender women in his custody. IDOC's 2019 PREA report states that approximately 62 transgender women were housed throughout the 21 men's prisons in Illinois.

**ANSWER: Defendant Jeffreys denies the allegation insofar as he knew that there were many transgender women in his custody. Defendant Jeffreys has insufficient knowledge or information to form a belief as to the truth of the remaining allegations, as contained in paragraph 87. Defendants Kennedy, Williams, Prentice, Schmeltz, Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 87.**

88. Defendant Jeffreys knew that transgender women housed in men's prison were particularly vulnerable to abuse and harassment.

**ANSWER: Defendant Jeffreys denies the allegations, as contained in paragraph 88. Defendants Kennedy, Williams, Shmeltz, Prentice, Hochbaum and Prentice have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 88.**

89.     Defendants Jeffreys knew that, because of transgender prisoners' increased vulnerability, in order to keep them safe, he was required to modify IDOC procedures, provide specific instruction to IDOC officials regarding the protections to which transgender prisoners were entitled, and take other reasonable measures to ensure the safety of transgender individuals incarcerated in the IDOC. He failed to take any action to protect Niyeh from the abuse and harassment she inevitably suffered.

**ANSWER: Defendant Jeffreys denies the allegations, as contained in paragraph 85. Defendants Kennedy, Williams, Shmeltz, Prentice, Hochbaum and Prentice have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 89.**

90.     As a result of Defendant Jeffreys's failures and Niyeh's placement in male prisons, she endured constant verbal harassment and abuse from both IDOC staff members and other people in custody. On a daily basis, people referred to her using transphobic slurs and threatened her with both physical and sexual violence. Niyeh lived in a constant state of terror, and the verbal abuse and harassment often caused her mental health to decompensate.

**ANSWER: Defendant Jeffreys denies the allegations, as contained in paragraph 90. Defendants Kennedy, Williams, Shmeltz, Prentice, Hochbaum and Prentice have insufficient knowledge or information to form a belief as to**

the truth of the allegations, as contained in paragraph 90.

91.     Defendant Jeffreys failed to enforce a requirement that Niyeh be permitted to shower separately from the males in custody. As a result, Niyeh had to choose between maintaining her personal hygiene or enduring the barrage of abuse and threats of sexual violence that she endured whenever she was naked in front of the men in custody with her.

**ANSWER: Defendant Jeffreys denies the allegations, as contained in paragraph 91. Defendants Kennedy, Williams, Shmeltz, Prentice, Hochbaum and Prentice have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 91.**

92.     Niyeh repeatedly requested permission from IDOC staff members to shower alone, out of sight of the men in custody. She filed numerous grievances on this issue. Defendant Jeffreys did not take any action to protect Niyeh from the harassment, threats, and humiliation she experienced when she was forced to shower in front of men during her entire incarceration.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegation, insofar as Plaintiff filed numerous grievances. Defendants deny the remaining allegations, as contained in paragraph 92.**

93.     Defendant Jeffreys failed to protect Niyeh and other transgender women from being strip-searched by male IDOC employees. Every time IDOC staff strip-searched Niyeh, male staff completed the search. This happened even when no exigent circumstances were present and female staff were available to conduct the search. Upon

information and belief, from January 20, 2021, to February 2022, IDOC staff members stripped search Niyeh 50–70 times. During each search, Niyeh was forced to disrobe in front of male officers who taunted her, humiliated her, threatened her with physical violence, and as detailed further below, groped her breasts.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegation, insofar as how many times Plaintiff was searched. Defendants deny the remaining allegations, as contained in paragraph 93.**

94.    Despite having knowledge of the violence and harassment that transgender individuals faced, Defendant Jeffreys failed to intervene to keep Niyeh safe. Because of these failures, Niyeh was subjected to serious harm throughout her incarceration, including severe harassment, sexual violence, and constant threats of physical violence.

**ANSWER: Defendants deny the allegations, as contained in paragraph 94.**

95.    To this day, as a result of Defendant Jeffreys's actions and inactions, as well as of the harassment and abuse she faced as a transgender woman in IDOC custody, Niyeh suffers severe mental distress, depression, and suicidal thoughts.

**ANSWER: Defendants deny the allegations, as contained in paragraph 95.**

**Pattern and Practice Allegations Against
Wardens Teri Kennedy and Tarry Williams**

96.    Despite the fact that Niyeh is a transgender woman, Defendants Williams

and Kennedy permitted Niyeh to be housed in the men's prisons they operated. Defendants Williams and Kennedy repeatedly denied her a formal, individualized, in-person review to determine whether she should be placed in a women's prison.

**ANSWER: Defendants deny the allegations, as contained in paragraph 96.**

97.     Defendants Williams and Kennedy failed to require that their staff members protect Niyeh from harm, abuse, harassment, and humiliation.

**ANSWER: Defendants deny the allegations, as contained in paragraph 97.**

98.     Defendants Williams and Kennedy knew that Niyeh was one of several transgender women in their custody. IDOC's 2019 PREA report states that approximately 62 transgender women were housed throughout the 21 men's prisons in Illinois.

**ANSWER: Defendant Williams and Kennedy deny the allegations, insofar as they knew that Niyeh was one of several transgender women in custody. Defendants Williams and Kennedy have insufficient knowledge or information to form a belief as to the truth of the remaining allegations, as contained in paragraph 98. Defendants Schmetlz, Prentice, Jeffreys, Hochbaum and Victum have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 98.**

99.     Defendants Williams and Kennedy knew that Niyeh, as a transgender woman housed in a men's prison, was particularly vulnerable to abuse and harassment.

**ANSWER: Defendants deny the allegations, as contained in paragraph**

**99.**

100.    Defendants Williams and Kennedy knew that, because of Niyeh's increased vulnerability, in order to keep her safe, they were required to modify the procedures within their prisons, provide specific instruction to their staff regarding the protections to which Niyeh was entitled, and take other reasonable measures to ensure Niyeh's safety. They failed to take any action to protect Niyeh from the abuse and harassment she inevitably suffered.

**ANSWER: Defendants deny the allegations, as contained in paragraph 100.**

101.    As a result of Defendant Williams and Kennedy's failures and Niyeh's placement in male prisons, she endured constant verbal harassment and abuse from both IDOC staff members and other people in custody. On a daily basis, people referred to her using transphobic slurs and threatened her with both physical and sexual violence. Niyeh lived in a constant state of terror, and the verbal abuse and harassment often caused her mental health to decompensate.

**ANSWER: Defendants deny the allegations, as contained in paragraph 101.**

102.    Defendant Williams and Kennedy failed to enforce a requirement that Niyeh be permitted to shower separately from the males in custody. As a result, Niyeh had to choose between maintaining her personal hygiene or enduring the barrage of abuse and threats of sexual violence that she endured whenever she was naked in front of the men in custody with her.

**ANSWER: Defendants deny the allegations, as contained in paragraph**

**102.**

103.     Niyeh repeatedly requested permission from IDOC staff members to shower alone, out of sight of the men in custody. She filed numerous grievances on this issue and upon information and belief, Defendants Williams and Kennedy were aware of her requests. Neither Defendant took any action to protect Niyeh from the harassment, threats, and humiliation she experienced when she was forced to shower in front of men during her entire incarceration.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegation, insofar as Plaintiff filed numerous grievances. Defendants deny the remaining allegations, as contained in paragraph 103.**

104.     Defendants Williams and Kennedy failed to protect Niyeh from being strip- searched by male IDOC employees. Every time IDOC staff stripped searched Niyeh, male staff completed the search. This happened even when no exigent circumstances were present and female staff were available to conduct the search. Upon information and belief, from January 20, 2021, to February 2022, IDOC staff members stripped search Niyeh 50–70 times. During each search, Niyeh was forced to disrobe in front of male officers who taunted her, humiliated her, threatened her with physical violence, and as detailed further below, groped her breasts.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the allegation of how many times Plaintiff was searched. Defendants deny the remaining allegations, as contained in paragraph 104.**

105.     Despite having knowledge of the violence and harassment that Niyeh

faced, Defendants Kennedy and Williams failed to intervene to keep Niyeh safe. Because of these failures, Niyeh was subjected to serious harm throughout her incarceration, including severe harassment, sexual violence, and constant threats of physical violence.

**ANSWER: Defendants deny the allegations, as contained in paragraph 105.**

106.    To this day, as a result of Defendants Williams and Kennedy's actions and inactions, as well as of the harassment and abuse she faced as a transgender woman in IDOC custody, Niyeh suffers severe mental distress, depression, and suicidal thoughts.

**ANSWER: Defendants deny the allegations, as contained in paragraph 106.**

### COUNT I
**42 U.S.C. §1983—14th AMENDMENT EQUAL PROTECTION CLAUSE
Claim for Damages Relief against Defendants Kennedy and Williams**

107.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER: Defendants re-state their Answers to preceding paragraphs, as if fully set forth herein.**

108.    Count I is alleged against Defendants Warden Kennedy and Warden Williams in their individual capacities.

**ANSWER: Defendants admit Plaintiff purports to sue Defendants Kennedy and Williams in their individual capacities.**

109.    Despite being a transgender woman, Niyeh was immediately placed in a

men's prison when she entered IDOC custody without any formal review on whether placement in a female prison would be appropriate.

**ANSWER: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations, as contained in paragraph 109.**

110.    While in IDOC custody, Niyeh faced verbal sexual harassment and sexual violence because of the way that IDOC staff interacted with her as a transgender woman. The verbal harassment was so pervasive and ongoing that it constitutes intentional discrimination on the basis of her gender identity. Niyeh was subjected to constant insults, threats, intimidation, and humiliation at a level that incarcerated cis-gender men and women simply do not endure.

**ANSWER: Defendants deny the allegations, as contained in paragraph 110.**

111.    As a result of the unjustified and unconstitutional conduct of the individual Defendants, Plaintiff suffered and continues to suffer damages, including but not limited to actual damages, humiliation, pain, fear, and emotional distress.

**ANSWER: Defendants deny the allegations, as contained in paragraph 111.**

## COUNT II
**42 U.S.C. § 1983—8th AMENDMENT FAILURE TO PROTECT**
**Claim for Damages Relief against Defendants Jeffreys, Kennedy, and Williams**

112.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER: Defendants re-state their Answers to the preceding**

paragraphs, as if fully set forth herein.

113. Count II is alleged against Defendants Director Jeffreys, Warden Kennedy, and Warden Williams in their individual capacities.

**ANSWER: Defendants admit Plaintiff purports to sue Defendants Jeffreys, Kennedy and Williams in their individual capacities.**

114. Defendant Jeffreys had actual knowledge of the substantial risk of harm faced by Niyeh and other transgender individuals in IDOC care. Alternatively, Defendant Jeffreys had constructive knowledge of the substantial risk of harm faced by Niyeh and other transgender individuals in IDOC care. The risk of harm to transgender individuals was longstanding, pervasive, and well-documented through, *inter alia*, numerous lawsuits and grievances.

**ANSWER: Defendants deny the allegations, as contained in paragraph 114.**

115. Despite his awareness of a substantial risk of harm to transgender prisoners, Defendant Jeffreys failed to protect transgender prisoners from abusive strip searches by neglecting to require or enforce a policy that prisoners could choose the gender of their searching guard. He further failed to implement policy protecting transgender individuals by permitting them to shower alone, requiring staff and officials to take action when transgender individuals reported threats of sexual violence, and disciplining staff who engaged in harassment and sexual/physical abuse of transgender individuals. Additionally, Defendant Jeffreys took no action to discontinue the harmful policy of placing transgender women in men's prisons.

**ANSWER: Defendants deny the allegations, as contained in paragraph**

**115.**

116.     Defendants Kennedy and Williams had actual and constructive knowledge of the substantial risk of harm faced by Niyeh and other transgender individuals in IDOC care. In addition to notice from lawsuits alleging disturbingly similar facts, Defendants Kennedy and Williams personally reviewed Niyeh's grievances detailing the abuse and harassment she suffered as a result of her transgender identity. Upon information and belief, Defendants Kennedy and Williams both had meetings and conversations with IDOC representatives about the harm Niyeh was experiencing and failed to take action.

**<u>ANSWER</u>: Defendants have insufficient knowledge or information to form a belief as to the truth of the allegations that Defendants Kennedy and Williams personally reviewed Plaintiff's grievances. Defendants deny the remaining allegations, as contained in paragraph 116.**

117.     Despite their knowledge of the substantial risk of harm, Defendants Warden Kennedy and Warden Williams failed to protect Niyeh from abusive strip searches and permitted male correctional officers to strip search her in an abusive manner. They further failed to require their staff to take action to protect Niyeh from the constant abuse, threats and harassment she endured by inter alia, permitting her to shower alone, requiring staff to take action when Niyeh reported threats of sexual violence, and disciplining staff who engaged in harassment and sexual/physical abuse of Niyeh.

**<u>ANSWER</u>: Defendants deny the allegations, as contained in paragraph 117.**

118.    As a result of the unjustified and unconstitutional conduct of the individual Defendants, Plaintiff suffered and continues to suffer damages, including but not limited to actual damages, humiliation, pain, fear, and emotional distress.

**ANSWER: Defendants deny the allegations, as contained in paragraph 118.**

119.    As such, plaintiff seeks actual and punitive damages.

**ANSWER: Defendants deny the allegations, as contained in paragraph 119.**

<u>**COUNT III**</u>
**42 U.S.C. § 1983—8th AMENDMENT CRUEL & UNUSUAL PUNISHMENT FOR ABUSIVE STRIP SEARCHES**
**Claim for Damages Relief Against Defendants Major Kemmeren, Lt. Hochbaum, Officer Schmeltz, Officer John Does 3-8, Unit Supervisor John Doe 9, and Officer John Does 12-20**

120.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER: Defendants re-state their Answers to the preceding paragraphs, as if fully set forth herein.**

121.    Count II is against Defendants Officer Schmeltz, Officer John Does 3-8, Unit Supervisor John Doe 9, and Officer John Does 12-20.

**ANSWER: Defendants admit Plaintiff purports to bring Count II against Defendant Schmeltz.**

122.    As described more fully above, Defendants inflicted unnecessary physical and emotional pain and suffering on Plaintiff. They did so intentionally, wantonly, and/or with malice in violation of Plaintiff's Eighth Amendment rights.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 122.**

123.    Alternatively, Defendants knew the risk of harm that their misconduct posed to Plaintiff and nevertheless acted with deliberate indifference in executing the invasive, abusive strip searches.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 123.**

124.    As a result of Defendants' unjustified and unconstitutional conduct, Plaintiff suffered pain, emotional distress, and injuries.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 124.**

125.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 125.**

126.    The actions of the individual Officer Defendants were the direct and proximate cause of the violations of Plaintiff's constitutional rights and of the damages suffered by Plaintiff, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 126.**

127.    As such, plaintiff seeks actual and punitive damages.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 127.**

## COUNT IV

**42 U.S.C. § 1983—8th AMENDMENT CRUEL & UNUSUAL PUNISHMENT FOR FAILURE TO PROTECT FROM SEXUAL AND PHYSICAL ASSAULT Defendants Warden Kennedy, Warden Williams, Major Prentice, Major Kemmeren, Lt. Hochbaum, Officer Victium, Officer Schmeltz, Sergeant John Doe 1, Lieutenant John Doe 2, Officer John Does 3-8, Unit Supervisor John Doe 9, and Officer John Does 12-20**

128.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth in this Count.

**ANSWER: Defendants re-state their Answers to the preceding paragraphs, as if fully set forth herein.**

129.    Count IV is against Defendants Warden Kennedy, Warden Williams, Major Prentice, Officer Schmeltz, Sergeant John Doe 1, Lieutenant John Doe 2, Officer John Does 3-8, Unit Supervisor John Doe 9, and Officer John Does 12-20.

**ANSWER: Defendants admit Plaintiff purports to bring Count IV against Defendants Kennedy, Williams, Prentice and Schmetlz.**

130.    As described more fully above, Defendants inflicted unnecessary physical and emotional pain and suffering on Plaintiff. They did so intentionally, wantonly, and/or with malice in violation of Plaintiff's Eighth Amendment rights.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 130.**

131.    Alternatively, Defendants knew the risk of harm that their misconduct

posed to Plaintiff and nevertheless acted with deliberate indifference in executing the invasive, abusive strip searches.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 131.**

132. As a result of Defendants' unjustified and unconstitutional conduct, Plaintiff suffered pain, emotional distress, and injuries.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 132.**

133. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 133.**

134. The actions of the individual Officer Defendants were the direct and proximate cause of the violations of Plaintiff's constitutional rights and of the damages suffered by Plaintiff, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 134.**

<u>**COUNT V**</u>
**42 U.S.C. § 1983—8th AMENDMENT FAILURE TO INTERVENE**
**Claim for Damages Relief Against All Defendants**

135. Plaintiff repeats and realleges the preceding paragraphs as if fully set forth

in this Count.

**ANSWER:** **Defendants re-state their Answers to the preceding paragraphs, as if fully set forth herein.**

136. Count III is alleged against all Defendants.

**ANSWER:** **Defendants admit Plaintiff purports to bring Count [V] against all Defendants.**

137. As described more fully above, Defendants each had a reasonable opportunity to prevent the violation of the constitutional rights of Plaintiff.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 138.**

138. Plaintiff's injuries were caused by employees of IDOC, including but not limited to the individually named Defendants, who acted pursuant to the policies and practices described more fully above.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 139.**

139. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice and knowing disregard for Plaintiff's clearly established constitutional rights, and not for any legitimate penological purpose.

**ANSWER**: **Defendants deny the allegations, as contained in paragraph 140.**

140. As a direct and proximate result of the Defendants' failure to intervene, Plaintiff suffered damages, including bodily injury, pain, suffering, emotional distress, anguish, and humiliation.

**ANSWER**: Defendants deny the allegations, as contained in paragraph 141.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Samuel "Niyeh" Higgins requests that this Court enter judgment in her favor against the Defendants in the following manner:

1.     Award Plaintiff reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

2.     Award Plaintiff such other and further relief as this Court may deem appropriate and just.

**ANSWER: Defendants deny Plaintiff is entitled to the above requested relief or any relief whatsoever.**

## JURY DEMAND

**Defendants demand a trial by jury.**

## GENERAL DENIAL

**Defendants deny each and every allegation not specifically admitted herein.**

## AFFIRMATIVE DEFENSES

**First Affirmative Defense:** At all times relevant herein, Defendants acted in good faith and in furtherance of lawful objectives without violating Plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. Defendants are therefore protected from suit by the doctrine of qualified immunity.

**Second Affirmative Defense:** Plaintiff was an incarcerated individual at the time he initiated this action. The Prisoner Litigation Reform Act ("PLRA") mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). Upon information and belief, Plaintiff failed to fully and properly exhaust his available administrative remedies regarding his claims against Defendants Kennedy, Williams, Schmeltz, Prentice or Jeffreys prior to filing this lawsuit. Therefore, his claims against those Defendants are barred by the PLRA and should be dismissed.

**Third Affirmative Defense:** Some of the events giving rise to Plaintiff's claims occurred over two years before this lawsuit was initiated. Therefore, all or part of Plaintiff's claims against the Defendants are barred by the applicable statute of limitations. *See Jenkins v. Village of Maywood*, 506 F.3d 622, 623 (7th Cir. 2007) (citing 735 ILCS § 5/13-202) (under Illinois law, the applicable statute of limitations period is two years from the date of accrual); *see also Sellars v. Perry*, 80 F.3d 243, 245 (7th Cir. 1996) (citing *Hondo, Inc. v. Sterling*, 21 F.3d 775, 778 (7th Cir. 1994)) ("A Section 1983 claim accrues when the plaintiff knows or has reason to know of the injury that is the basis of his action.").

Respectfully submitted,

**KWAME RAOUL**                    By:    */s/ Marrian M. Daniel*
Attorney General of Illinois              MARRIAN M. DANIEL
                                          Assistant Attorney General
                                          Office of the Illinois Attorney General
                                          100 W. Randolph St., 13th Flr.
                                          Chicago, Illinois 60601
                                          (312) 814-4752
                                          *Marriam.Daniel@ilag.gov*

<u>**CERTIFICATE OF SERVICE**</u>

The undersigned hereby certifies that on November 6, 2023, the foregoing document was filed with the Clerk of Court using the CM/ECF system. All participants in the case are registered CM/ECF users who will be served by the CM/ECF system.

*/s/ Marrian M. Daniel*